# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSLYVANIA

| | | |
|---|---|---|
| DARRELL R. BETHA | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 18-328 |
| | ) | |
| v. | ) | Magistrate Judge Lenihan |
| | ) | |
| SGT. PIERCE CO 11 | ) | ECF No. 36 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Presently before the Court is the Motion for Summary Judgment filed by Defendant Sgt. Pierce (ECF No. 36). For the reasons discussed below, the motion will be granted.

I. RELEVANT FACTS

The following facts are undisputed unless otherwise indicated and are taken from the parties' submissions at ECF Nos. 36, 37, 41, 42, 43, 44, and 45 and all attachments.

In response to a motion filed by Defendant, this Court held an Evidentiary hearing on December 17, 2018 on the issue of exhaustion. (Transcript of Evidentiary Hearing, ECF No. 32.) Defendant states that "[t]he undisputed facts are set forth in the transcript . . . ." (Defendant's Brief in Support of Summary Judgment, ECF No. 37 at 2.)

Darrell Betha, the pro se Plaintiff, is currently housed at SCI-Phoenix. (ECF No. 37 at 1.) He was formerly housed at SCI-Fayette but was granted Authorized Temporary Absence ("ATA") to SCI-Greene for a pre-trial conference in a civil case. (ECF No. 42 at 1.) Concurrently, he was in the process of appealing his own criminal conviction. (*Id.*)

On January 25, 2016, the Superior Court issued a deadline of March 7, 2016 for Plaintiff to file his brief in his criminal case. (ECF No. 32 at 23.) Instead, Plaintiff filed a petition for remand on February 17, 2016 in order to file a 1925(b) statement of matters complained of on

appeal. (ECF No. 32 at 23-24.) The Superior Court denied the petition for remand on March 8, 2016. (ECF No. 32 at 24-25.) Plaintiff was given a new deadline, April 7, 2016, to file his brief relative to his appeal to the Superior Court. (ECF No. 32 at 25.)

Plaintiff was transferred from SCI-Fayette to SCI-Greene on March 31, 2016 by Court order dated March 1, 2016 so that he could attend a pretrial conference in a civil case on April 7, 2016. (ECF No. 32 at 17.) Plaintiff alleges that on March 31, 2016, Sgt. Pierce prohibited him from taking with him his core legal documents relating to his criminal case. (Complaint, ECF No. 7 at 2.) He further alleges that he was allowed to take only legal documents relating to the civil case. (ECF No. 7 at 2.) The record reflects that Plaintiff knew he would be unable to take documents relating to his criminal matter at least by March 29, 2016. *See* Petition for Extension of Time, ECF No. 16-4.

Plaintiff then filed a petition for an extension of time on April 14, 2016[1] and was granted until June 6, 2016 to file his brief to the Superior Court. (ECF No. 32 at 26.) Plaintiff filed another petition for an extension of time on June 1, 2016[2] and was granted a new deadline to file by July 6, 2016. (ECF No. 32 at 27-28.) The June 1, 2016 Order setting the new deadline of July 6, 2016 indicated "no further extensions absent extraordinary circumstances." (ECF No. 16-5 at 6.)

Plaintiff did not file a brief before the July 6, 2016 deadline, nor before August 17, 2016, when the Superior Court subsequently dismissed his appeal. (ECF No. 32 at 29.) In the Complaint relating to this civil action, Plaintiff claims that he was unable to file his brief because Sgt. Pierce prohibited him from bringing his core legal documents with him when he was

---

[1] Plaintiff petitioned for an extension of time to file his brief on the bases of his temporary transfer, the uncertainty of his return date, and his inability to access his legal documents during the transfer.
[2] Plaintiff petitioned for another extension of time to file his brief for the same reasons.

2

transferred to SCI-Greene. (ECF No. 7 at 2.) He argues that Sgt. Pierce's actions constituted a denial of access to the courts, causing a lost opportunity to pursue attacks on his conviction.

II.     LEGAL STANDARD

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, the pleadings, documents, electronically stored information, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a) & (c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. *Id*. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

> party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

III.  ANALYSIS

<u>Exhaustion</u>

Through the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *See Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 90-91 (footnote omitted). Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id*. at 93 (quoting *Porter*, 534 U.S. at 525). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." *Id*. at 83; *see also Spruill v. Gillis*, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See*, *e.g.*, *Booth v. Churner*, 206 F.3d 289 (3d Cir. 2000); *Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008); *Jetter v. Beard*, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," *Harris v. Armstrong*, 149 F.

App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *Davis*, 49 F. App'x at 368; *see also Brown v. Croak*, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); *Camp*, 219 F.3d at 281 (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *Harris*, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. *Davis*, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. *Casey v. Smith,* 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. *Oliver v. Moore,* 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

No analysis of exhaustion may be made absent an understanding of the administrative process available to inmates. In this regard, the United States Supreme Court noted the following:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirement, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007).

Within DC-ADM 804, the Inmate Grievance System Policy, the Pennsylvania Department of Corrections established a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review and shall include a statement of facts including the date, time, location, and identity of individuals directly involved. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

Here, Defendant argues that Plaintiff failed to exhaust the claim presently before the Court: that Defendant Pierce at SCI-Fayette prohibited him from taking his legal materials relevant to his ongoing criminal appeal when he went on ATA to another institution. Instead, Plaintiff filed Grievance No. 634114 wherein he complains that due to his extended ATA, he missed a deadline in his criminal case, and that this extended ATA was in retaliation for filing a civil action that was settled out of court. Nowhere in the administrative process relating to Grievance No. 634114 does Plaintiff name Sergeant Pierce nor state that he was denied access to the courts based upon the actions of any corrections officer who prevented him from taking certain of his legal documents with him on ATA. ECF No. 32, Transcript of exhaustion hearing, at 8, 9, 13. (hereinafter "Transcript at ___"). Plaintiff testified that he did not know Sergeant Pierce's name at the time he filed the grievance. Transcript at 33. He admitted, however, that upon his return to SCI – Greene, he knew that Sergeant Pierce was the person who allegedly wronged him and did not add his name to any of the subsequent grievance documents. Transcript at 35, 38. Defendant additionally argues that Plaintiff did not properly follow the grievance process at SCI – Greene. ECF No. 32, Transcript at 7. The Third Circuit requires that the inmate follow the grievance system policy at the institution. Specifically, if that policy requires it (which it does in this instance), the grievance must identify not only the facts relevant to the claim, it must also identify the individuals involved. *Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004). That did not occur in this case. Therefore, Defendant's Motion for Summary Judgment will be granted as to failure to exhaust.

Access to the Courts

In the alternative, even if Plaintiff exhausted his administrative remedies, summary judgment is still appropriate on Plaintiff's substantive § 1983 claim relating to access to the courts.

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Since 1977, the United States Supreme Court has recognized that inmates have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). As the Supreme Court initially observed, this right of access to the courts is satisfied when corrections officials facilitate "meaningful" access for those incarcerated, either through legal materials or the assistance of those trained in the law. *Id.* at 827-28 ("[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."). Two decades later, in 1996, the Supreme Court

9

provided further definition and guidance regarding the scope and nature of this right in *Lewis v. Casey*, 518 U.S. 343 (1996). In *Lewis*, the Court eschewed efforts to define this right in abstract, or theoretical terms, but rather cautioned courts to focus on concrete outcomes when assessing such claims. As the court observed:

> Because *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's . . . legal assistance program is subpar in some theoretical sense . . . . Insofar as the right vindicated by *Bounds* is concerned, "meaningful access to the courts is the touchstone," *id.*, at 823, 97 S. Ct., at 1495 (internal quotation marks omitted), and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the . . . legal assistance program hindered his efforts to pursue a legal claim. Although *Bounds* itself made no mention of an actual-injury requirement, it can hardly be thought to have eliminated that constitutional prerequisite. And actual injury is apparent on the face of almost all the opinions in the 35-year line of access-to-courts cases on which *Bounds* relied, *see id.*, at 821-825, 97 S. Ct., at 1494-1497. Moreover, the assumption of an actual-injury requirement seems to us implicit in the opinion's statement that "we encourage local experimentation" in various methods of assuring access to the courts. *Id.*, at 832, 97 S. Ct., at 1500.

*Lewis*, 518 U.S. at 351-52.

Thus, following *Lewis*, courts have consistently recognized that access-to-courts claims by prisoners require some proof of an actual, concrete injury in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See*, *e.g.*, *Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997); *Demeter v Buskirk*, No. 03-1005, 2003 WL 22139780 (E.D. Pa. Aug. 27, 2003); *Castro v. Chesney*, No. 97-4983, 1998 WL 150961 (E.D. Pa. March 31, 1998).

"[P]risoners may only proceed on access-to-courts claims in two types of cases, challenges (direct or collateral) to their sentences and conditions of confinement." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008). As noted in *Monroe*:

> Where prisoners assert that defendants' actions have inhibited their
> opportunity to present a past legal claim, they must show (1) that
> they suffered an "actual injury"—that they lost a chance to pursue
> a "nonfrivolous" or "arguable" underlying claim; and (2) that they
> have no other "remedy that may be awarded as recompense" for
> the lost claim other than in the present denial of access suit.

Id. (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Importantly, Plaintiff must come forward with evidence to show that the underlying arguable claim is "more than hope," and he must also describe the "lost remedy." *See Harbury*, 536 U.S. at 416-17.

Plaintiff is thus required to show that he was actually injured by Sgt. Pierce's alleged interference with his right to access the courts. Plaintiff, in his brief in opposition to Defendant's Motion for Summary Judgment, states that the actual injury he suffered was the lost opportunity to pursue attacks on his criminal conviction—specifically, the lost claim that his right to effective counsel was violated because his counsel allegedly failed to conduct any pre-trial investigation, violating Plaintiff's Right to Counsel pursuant to the Sixth and Fourteenth Amendments. (Plaintiff's Brief in Opposition to Summary Judgment, ECF No. 42 at 9.)

Here, Plaintiff is unable to prevail because Defendant Pierce's actions did not inhibit Plaintiff's opportunity to present a past legal claim. That is, Defendant Pierce did not prevent Plaintiff from pursuing a "nonfrivolous" or "arguable" underlying claim. First, Plaintiff had over a month to meet the first deadline of March 7, 2016. Yet, he did not comply with the Court's Order of January 25, 2016. In addition, Plaintiff had over three weeks to file the brief prior to his transfer on March 31, 2016 and before the April 7, 2016 deadline set by the Superior Court. Plaintiff missed this opportunity as well. Thereafter, Plaintiff petitioned the Superior Court for an extension of time one week after the deadline of April 7, 2016 while on ATA, which was granted until June 6, 2016. Plaintiff had not been transferred back to SCI-Fayette so sought another extension. The Superior Court granted that request as well and extended the deadline

until July 6, 2016. Although the order stated, "no further extensions absent extraordinary circumstances[,]" Plaintiff did not petition for an additional extension even though his previous petitions were routinely granted. Finally, when he returned to SCI-Fayette where his documents were located on July 12, 2016, he did not seek an extension and the Superior Court dismissed his appeal on August 17, 2016 for failure to file a brief.

In addition, Plaintiff comes forward with no evidence as to the actual contents of the box of documents and whether they would have furthered a nonfrivolous or arguable underlying claim. In *Spencer v. Bush*, the United States Court of Appeals for the Third Circuit affirmed the dismissal of access-to-court claims because the plaintiff failed to demonstrate that the documents contained in the missing boxes would have furthered one or more claims that were non-frivolous or arguable. 543 F. App'x 209, 213 (3d Cir. 2013). *See also McCain v. Wetzel*, Civil Action No. 1:12-CV-00789, 2014 WL 4977352, at *6 (M.D. Pa. Aug. 6, 2014) (Plaintiff does not show how destroyed documents are tied to his actual innocence claim.). Similarly, Plaintiff here offers no evidence to show that his underlying claim (right to effective counsel) would have been furthered by the legal documents he was unable to carry with him on ATA.[3] Moreover, Plaintiff's proffered claim appears to reflect mere hope. *See Harbury*, 536 U.S. at 416-17. Therefore, Plaintiff's claim cannot survive summary judgment because he fails to come forward with an issue of material fact that Defendant Pierce's actions inhibited his opportunity to present a nonfrivolous or arguable underlying claim. *See Monroe,* 536 F.3d at 205.

---

[3] In a "Declaration in Opposition to Defendant's Motion for Summary Judgment," Plaintiff references as Exhibit A, a "1925(b) Statement of Matters Complained of on Appeal." (ECF Nos. 43 & 43-1.) Plaintiff indicates that he typed up this statement in anticipation that his remand motion would be granted. According to Plaintiff, the 1925(b) Statement lists the issues that he would have raised on appeal to be reviewed by the Superior Court regarding the dismissal of his PCRA petition. The Statement references PCRA counsel's *Finley* letter. *See Commonwealth v. Finely*, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc) (describing requirements of *Finley* letter when appointed counsel seeks to withdraw from a collateral appeal filed under the PCRA, attesting that no issue of arguable merit exists). Even if the Court assumes that this document was in the legal materials that Plaintiff did not have access to at SCI-Greene, the document does not suggest a "nonfrivolous" or "arguable" underlying claim.

IV.     CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant Sgt. Pierce (ECF No. 36) will be granted.

An appropriate order will follow.

Dated:  August 5, 2019

**BY THE COURT**

_____
LISA PUPO LENIHAN
United States Magistrate Judge


cc:     DARRELL R. BETHA
        GN-5312
        SCI Pheonix
        Box 244
        Collegeville, PA 19426-0244